### THOMAS et al. v. PEERLESS CARBON CO.
#### Civil Action No. 550.

District Court, N. D. Texas,
Amarillo Division.

Aug. 9, 1945.

H. H. Cooper, of Amarillo, Tex., for plaintiffs.

Morgan, Culton, Morgan & Britain, of Amarillo, Tex., for defendant.

WILSON, Judge.

■ This is a suit arising under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Plaintiffs sue defendant on the theory that their hour off at noon for lunch should be paid for as overtime, at one and one half. The suit was filed February 22, 1945. All of the plaintiffs are old employees, having worked for defendant for about four to nine years. They sue for the lunch hours every day they have worked since their respective beginning dates. Defendant pleads the two year statute of limitation as a bar to all such claims arising prior to February 22, 1943. That plea is sustained.

No one could gather from the reading of plaintiffs' petition, or defendant's answer, that the nature of this suit is, as stated above. The substance of the petition is that plaintiffs worked a stated number of hours in a certain year or during a given period, for which they were never paid. Other than limitation, defendant's answer consists of admissions and denials that plaintiffs worked the hours claimed. The unique and interesting character of the case, embracing the theory on which the additional hours were claimed, came out in the trial. The true theory not until we were considerably advanced in the trial.

Defendant is in the business of manufacturing carbon black, its plant being located at LeFors, Gray County, Texas. Carbon black is manufactured by a gas flame applied to cylindrical, slowly rotating, metal plates. The carbon forms on such plates in a very similar way to soot forming on a lamp chimney, where the wick is too high or is trimmed unevenly. Such soot is in fact a form of carbon black. In its original state, carbon black is about as light as air. As the cylindrical plate rotates, a mechanical scraper clears it of the black, which then goes to the packer bins for further processing, preparatory to use commercially. Many of these cylinders are operated in one building, under one roof, powered by one engine, in this case, electrically driven. There are about twenty of these rooms or houses, all powered by the one engine, which, when turned on by pressing a button, operates the entire plant, all machinery then operating automatically. Only one engineer, called an operator, is needed to operate all machinery, except a comparatively few men to attend to the packer bins. As to the packer bins, the evidence shows, without controversy, they will take black for a half day without any attention or resulting injury to the black or machinery. Therefore, they are eliminated as necessitating any one to look after them during any lunch hour, or any period of break-down of machinery. There is, however, an element of more or less danger to parts of the machinery by sudden breakdowns of power. If the engine goes off because of lightning or other cause, all of which are rare, the machinery stops throughout the plant. This leaves multiple gas jets burning against stationary, rather than rotating, cylindrical plates, on which the carbon black is formed. If that is allowed to continue, it appears the principal destruction is of the metal shafts on which such cylinders ride. So every unexpected shut-down presents an immediate emergency to get all gas cut off, otherwise the Company is threatened with the danger of a big shaft repair, or replacement, job throughout the plant. Therefore, it is of vital necessity that every man who comes to work in the plant be specially instructed as to this ever present potential danger, and how to cope with it. The plant runs twenty-four hours a day. All employees, as starters, are warned of this danger, and how to take care of it, regardless of shifts, day or night.

Based on plant experience, general instructions to these plaintiffs and all employees were: when the power cut off, within five minutes from that time, to commence cutting off the gas throughout the plant. This was not because burning the gas on the plates, then stationary, for longer than five minutes would hurt them or the shafts. But, because if there was greater delay, taking into account the length of time it would take to cut off the gas in the twenty separate rooms, such injury might result. The parties are agreed that very serious damage would ultimately result if the fire was not cut off.

Plaintiffs base their whole theory of recovery for the lunch hours as work, and as overtime, on those instructions as to turning off gas. It is a process of reasoning with them, if they had to commence turning off gas within five minutes after an engine went out, they would have to remain in or about the premises during their lunch hours to see if and when the power did cut off. That might be correct if they had been required in their employment contracts to eat their lunches and remain on

the premises, for such a purpose, during lunch hours. They do not testify, nor do they contend, that such was expressly required of them by their contract with defendant. There are four of plaintiffs. Only one of them did not testify. One who testified worked for defendant four years. The other two, eight to nine years. Nearly all the years they worked it had never occurred to them that, the way they spent their lunch hours was work. They stated that a representative of the Wage and Hour Division visited them in July, 1943, and put this idea in their minds, that their lunch hours, under such instructions, constituted work under the Act. Defendant first heard of such claims in July, 1944. Plaintiff Thomas was then the only one of plaintiffs still working for the Company. He made his first demand of the Company about July, 1944, through his employed attorney.

■ There were quite a number of witnesses. I will not discuss the details of their testimony, since it would unduly prolong this opinion. There are a few general phases of the evidence I will briefly refer to later. There is not so much difficulty about the law of the case, I think. The decision turns almost entirely on whether, as a matter of fact, the time plaintiffs spent on the defendant's premises during the noon lunch period was understood to, or did, under the statute, constitute work. Under such facts, presenting as they do very little direct conflict, and under the words and provisions of the Act, can it be fairly deducted, that Congress had the intent that such time should be classed as work? I hold it cannot.

Plaintiffs have failed to discharge the burden of proof imposed upon them by the law. Defendant, to the contrary, has produced satisfactory proof that the lunch hours of these plaintiffs were free to them and clear of any contractual duty, expressly or by implication, to do anything for defendant during such lunch periods. I am convinced from the evidence that plaintiffs were fully aware of their right to be wherever they chose during such lunch hours. It is admitted they lived six to seven miles from the plant. As a practical matter, they were forced to take their lunches and eat them on, or around, the plant premises. This is doubtless true of millions of factory employees throughout the country. I am satisfied in every such factory, the employers would appreciate, or even expect, such employees so eating their lunches on the premises, if any fire broke out in the factory, to quit their lunches and try their best to help put it out. In this case, since plaintiffs voluntarily remained on the plant premises, the defendant doubtless would have appreciated or expected them to go to the protection of the plant property if any sudden emergency arose that threatened injury or destruction to it, whatever the source, including this eventuality of the power going off. The defendant's employees were paid overtime when they worked overtime. There is no dispute about that. Nor that they were often urged to keep up with, and put in, their overtime. Nothing could have been better understood by plaintiffs than this, that they would be paid overtime rates for all work they did over eight hours, whatever the cause.

The plant experience here, as a business proposition, would not have justified keeping their regular men, or the employment of special men, to remain on the premises during the lunch hours to possibly cut off gas. The records show, that the danger is entirely too remote. Defendant runs another plant in Louisiana. There it is convenient for the crews to eat their lunches off the factory premises, and they do so, leaving no operators, such as plaintiffs, on the premises during the lunch hours. Mr. Johnson, Superintendent, and Mr. Foster, an executive of the Company, testified such had always been, and was now, the privilege of the employees at the LeFors plant. Not all the time in question, but a good part of it, the defendant kept a notice posted on the Bulletin in this plant, that the lunch hour was free to employees. Mr. Foster testified he had been in the business twenty-five years and based on that experience, it was found it would not injure the cylindrical plates, while stationary, for the gas to burn on them for a period of one hour. In fact, these plates when rotating, do not lack much of being stationary, since one revolution requires forty-five minutes. It is rather significant that plaintiffs were all on the shift that embraced the noon hour; that none of the other two eight-hour shifts, who also ate their lunches on the premises, have ever presented such a claim. In fact, it is shown that some of the employees leave the premises, and pursue their own pleasures, during such lunch hours, and that

their right to do it has never been questioned.

The employment of men to stand watch during such hours would not be justified from another standpoint. Any one can readily appreciate the improbability of a break-down occurring at 12 o'clock and ending at 1 P. M., or any time during that hour. Generally the chances would be twenty-three to one against it, if it happened every day. The defendant introduced the records as to how many such break-downs of power had occurred for two years and four months prior to February 22, 1945, the date of filing this suit.

1943: February, March, April, and May —None.

June—two hours.

July, August, September, October and November—None.

December 10—2 hours, 9 a.m. to 11 a.m.

December 13—1 hour, 3 p.m. to 4 p.m.

1944: January 1 hour, 9 p.m. to 10 p.m.

February and March, none.

April 13—1 hour, 1:30 p.m. to 2:30 p.m.

May 1—1 hour, 9 p.m. to 10 p.m.

May 30—2 hours, 6 a.m. to 8 a.m.

June and July—None.

August—1 hour, 7 a.m. to 8 a.m.

September—none.

October 6—6 hours, 10 p.m. to 4 a.m.

November—1 hour, 7 p.m. to 8 p.m.

December—1 hour, 3:30 p.m. to 4:30 p.m.

1945: January, February, March and April—None.

It shows no break-down during the noon hour for the entire period. In fact, it shows an almost infinitesimal amount of time was consumed by shut downs during the period. Plaintiffs did not show that there was ever a break-down in their lunch hours, even back to 1938, when some of them commenced work. Yet plaintiffs ask this Court to give them a total of $7,202.88 for work during their lunch hours, which, as a matter of fact, they spent eating and lounging at a park-like placed fixed on the premises by defendant for their convenience and pleasure. I hold the claims are untenable under the law and the facts; that they are cruelly unfair demands, even if the law did support them under such facts; that Congress had no such intent as plaintiffs would have us believe.

Plaintiffs cite the following authorities in support of their position: Tennessee Coal, Iron & Railroad Co. v. Muscada Local No. 123 et al., 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corporation v. Local No. 6167, United Mine Workers, 65 S.Ct. 1063, 89 L.Ed. ——; Armour & Co. v. Wantock, 323 U.S. 818, 65 S.Ct. 165; Skidmore et al. v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161; Fleming v. Rex Oil & Gas Co., D.C., 43 F.Supp. 950. I will not discuss the cases. I think all of them are readily distinguishable from this one.

Defendant submits the following authorities: Sunshine Mining Company v. Carver, U. S. Dist. Atty., et al., D.C., 41 F. Supp. 60; Interpretative Bulletin No. 13, discussing Sections 6 and 7 of the Act, issued by the Wage and Hour Division; Fox et al. v. Summit King Mines, Ltd., 9 Cir., 143 F.2d 926, 932. The latter case is very similar in its facts to this one. It was a lunch hour claim. The trial court denied it, and the 9th Circuit affirmed its action. In doing so, they said this:

"Appellants' argument seems almost to go to the extent of maintaining that the mere fact that employees were permitted to remain in or about the mill during the lunch period, or perchance that during such time they may have voluntarily performed some emergency service, that such circumstances would be sufficient to bring appellants within the provisions of the Act, notwithstanding the rule of the company as to free time or the further fact that the management assumed that any such occasional emergency service was charged as overtime by the worker on his time card and paid for as such. * * *

"The answer to appellants' argument that appellee suffered or permitted them to work is that in our opinion the words 'suffer' and 'permit' as used in the statute means 'with the knowledge of the employer.'"

Plaintiffs' claims are denied. The attorneys may draw up an order for my signature.