William E. **CLARK**

v.

**ATLANTA NEWSPAPERS, INC. d/b/a
The Atlanta Journal.**

**Civ. A. No. 14173.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 21, 1973.

Arthur Howell, III, of Jones, Bird & Howell, Atlanta, Ga., for plaintiff.

William W. Alexander, Jr., of Fisher & Phillips, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

On May 4, 1973, a hearing in this wage and hour case was held on the objections by the parties to the report and recommendations of the special master. The court allowed the parties to file supplemental briefs, which have now been received, and the case is at last ready for final disposition.

Plaintiff William Clark brought this action in September 1970 claiming that the defendant Atlanta Journal had wrongfully refused to pay him for 305.75 overtime hours worked from August 26, 1968 to May 23, 1969 when he was employed as its college sports editor, in violation of the Fair Labor Standards Act of 1938 [hereinafter "FLSA"], 29 U.S.C. § 207.[1] In addition to claiming $2,202.19 for uncompensated overtime, plaintiff also sought liquated damages of an equal amount as provided in § 16 of the FLSA, 29 U.S.C. § 216(b),[2] and costs and attorneys' fees totaling $11,180.81.

By order of the court, the case was referred to the United States magistrate who served as special master, and the matter was set down for hearing on May 22, 1972. The hearing lasted some eight days, during which time 1,661 pages of testimony were taken and 75 exhibits were introduced. The report of the special master, filed October 31, 1972, made the following disposition of plaintiff's claim. The master found that of the 305.75 overtime hours claimed, plaintiff was entitled to compensation for only 67.5. This sizable reduction in the alleged overtime hours was due largely to two findings. First, the master eliminated 52.5 hours, alleged to have been worked between August 26 and September 18, 1968, by finding that the applicable statute of limitations set forth in 29 U.S.C. § 255(a) was two years.[3] Second, the master found that time taken by the plaintiff for a 30-minute coffee-break and one-hour lunch period, totaling 195 hours, could not be included in overtime hours worked, with the result that some 144.5 hours claimed by plaintiff were not allowed.[4] The master found that "bad faith" could not be attributed to the defendant, and denied plaintiff's request for liquidated

1. Section 207, Title 29, U.S.C., reads in relevant part: "(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed . . . ."

2. Section 216(b), Title 29, U.S.C., provides: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

3. Section 255(a), Title 29, U.S.C., states that any cause of action for unpaid overtime compensation, accruing on or after May 14, 1947 "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be

commenced within three years after the cause of action accrued."

4. The court has struggled to reconcile the master's computations of the number of overtime hours disallowed against the number of hours claimed. *See* Report of the Special Master at 18. Its efforts have met with only limited success and the above figures represent the court's attempt to rationalize the figures found with what it understands to be the total number of noncompensated hours claimed. Plaintiff points out that the master erred in not listing six hours of overtime for the week ending January 26, 1969, after having found that plaintiff worked a total of 46 hours. On remand the master will correct this apparent error, or offer an explanation for the discrepancy. Aside from this error, neither party disputes the summary of the master's computations, and from this the court concludes either that the computations are clear to everyone but the court, or that the parties feel that they are sufficiently accurate so as to make unprofitable a time-consuming, wholesale redetermination. In any event, the parties having raised no wholesale objection, the court will not enter into this thicket on its own.

damages asserted under 29 U.S.C. § 260. Finding also that the plaintiff overtried his case, the master awarded plaintiff only a fraction of the costs incurred and greatly reduced the requested attorneys' fees. As set forth in the master's recommendations, $494.06 was awarded in unpaid overtime, $269.68 was allowed for the cost of depositions, $37.85 for miscellaneous expenses, and $1,000 for attorneys' fees.

Plaintiff has excepted in great detail to virtually all of the master's findings of fact and conclusions of law. Defendant Journal, which has thus far emerged from this litigation as the practical winner, makes only two objections to the master's report. First, the Journal argues that the master incorrectly calculated the amount of overtime pay due plaintiff on the basis of a regular workweek of fixed hours, rather than using the standard of "fixed salary for fluctuating hours." Second, it objects that the master incorrectly awarded overtime compensation for overtime hours worked during two holiday weeks (Thanksgiving and Christmas) in 1968. The court has reviewed in painful detail the lengthy record in this case, and has considered the arguments advanced by the parties. For the reasons set forth below it finds that the master's recommendations must be amended in several respects.

## I. STANDARD OF REVIEW

With respect to the master's factual determinations the standard of review to be applied by the court is set forth in Rule 53(e)(2), Fed.R.Civ.P., "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Such a finding, it has been held, is clearly erroneous when, although there is evidence to support it, the court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Trans World Airlines, Inc. v. Hughes, 308 F.Supp. 679 (S.D.N.Y.1969), rev'd on other grounds, Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); 9 C. Wright, Federal Practice and Procedure: Civil § 2614 at 810 (hereinafter "Wright"). The master's findings of law carrying no weight with the court. Wright, § 2614 at 813; see W. R. B. Corp. v. Greer, 332 F.2d 180 (5th Cir. 1964), cert. denied, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47.

## II. PLAINTIFF'S OBJECTIONS

### A. Failure of master to make findings on a "daily" basis.

Plaintiff's first of many objections is that the master has summarized his disposition of plaintiff's overtime claims on an aggregate weekly basis. Plaintiff's argument before the master presented the allegedly uncompensated overtime hours on a daily basis, and by making his findings on a weekly basis, plaintiff complains, the master has made it impossible for plaintiff to determine which hours claimed as overtime during a particular week were allowed and which were rejected. To this claimed error there are two answers.

First, as a general proposition the master was not required to set out the evidence or probative, evidentiary or subordinate facts in support of his ultimate finding that a certain number of claimed hours were proven to be overtime worked and others were not. See United States v. 3,065.94 Acres of Land, 187 F.Supp. 728, 731 (S.D.Cal.1960). As long as the evidence in the record of the proceedings is readily available for the court to determine whether or not the master's findings are clearly erroneous, plaintiff has suffered no reversible prejudice by the master's summary listing of the ultimate facts found.

Second, the nature of plaintiff's proof of the overtime hours in question here depended almost entirely on the master's assessment of credibility of witnesses. As stated above, the great bulk of the overtime hours claimed and rejected were owing to the master's application of the two-year statute of limitations and his finding that coffee-break and lunch hours were not compensable

time to be counted in determining overtime. Of the total 305.75 hours, only 41.25 hours were found by the master not to have been proven by particular evidence going to individual periods of claimed compensable time. As to these hours, the only ones relevant to plaintiff's first objection, plaintiff attempted to prove that he had, in fact, worked them by "showing his work habits and techniques and refreshing his memory from a scrapbook of stories written by him." "In other words," said the master, "the nature of his proof was that it takes me [sic] five hours to cover a football practice and write a story about it so if I wrote a story about football practice on a certain date, I must have worked five hours on it. * * * The defendant met this evidence in the same manner. They [sic] showed by their managing agents and other sports writers, all of whom had performed the same type work, that they took three hours to cover a football practice and write a story about it; so if plaintiff performed this function it should have only taken him three hours to do it."[5] The master states that the type of evidence received on these disputed hours fell into three categories. "First, the testimony of plaintiff as to the long hours he spent on these assignments, which I think were [sic] exaggerated; secondly the testimony of the editors as to how little time these assignments should take, which I also think was exaggerated; and thirdly the testimony of other sports writers whose testimony generally showed that it took less time than the plaintiff said and more time than the editors said." [6]

From the master's characterization of the evidence received, which the court finds from the record to be correct, it is clear that the master's assessment of the witnesses' credibility was the crucial factor in his finding that plaintiff had failed to prove the 41.25 hours of claimed overtime worked. In reviewing this finding the court would therefore give even greater weight to the due regard it always has for the master's opportunity to judge credibility of witnesses. United States v. S. Volpe & Co., 359 F.2d 132 (1st Cir. 1966). Given the great deference which the court would of necessity pay to the master's assessment of credibility, the court finds that plaintiff has suffered no practical harm by the master's failure to specifically identify which hours during a given week he found to be unproven by plaintiff.

B. Failure of master to include coffee-break and lunch periods in computation of overtime hours.

■ Plaintiff argues that the morning coffee-break was compensable time because "plaintiff and other staff members were not required to take said breaks, were never instructed to deduct said time from their time slips," and because the evidence showed that plaintiff took his coffee-break at his desk while he answered the telephone or worked on stories. Plaintiff also argues that there was an agreement that the morning coffee-break was allowed to the staff as compensation for their having to report early in the morning.[7] The lunch hour, plaintiff argues, was compensable because plaintiff did not leave the building for lunch but instead ate a sandwich at his desk while answering the telephone and doing miscellaneous work.

The master found, and the record abundantly supports his finding, that there was a period of time between 9:30 a. m. and 10:30 a. m. each day that plaintiff was free to leave the premises of his employer to engage in meals or other personal matters. The master also found, and this finding plaintiff does not dispute, that there was a period between noon and 1:30 p. m. while the final edition was being printed, that all employees of the Sports Department of the Journal were permitted to take one

5. Report of the Special Master, 11–12.

6. Id., 8.

7. Plaintiff's Objections to the Report of the Special Master, 9–11.

hour for lunch. During this hour, the master found, the employees "were free to leave the premises and engage in their own personal affairs. The times were staggered so that there were always two or three people not on lunch break available to answer phone, make corrections from the composing room, etc."[8] Plaintiff objects that application of the proper wage-hour standards dictates a finding that the daily coffee-break and lunch hour constituted compensable time which should have been included in determining the overtime hours owed and not paid. The court disagrees.

To begin with, the court finds that the two periods in question do not constitute hours worked under the applicable regulations. Under 29 C.F.R. § 785.-16, "Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case." Under 29 C.F.R. § 785.19, "Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee-breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to eat at his desk or a factory worker who is required to be at his machine is working while eating." Here, plaintiff under-

stood that he would be permitted to leave the office for a 30-minute coffee-break and a one-hour lunch period, and the record reflects that on several occasions plaintiff took advantage of these meal periods. It is undisputed that neither plaintiff nor his fellow staff workers were *required* to take either their coffee-break or lunch hour at their desk.

Under the applicable case law, the periods in question meet three prerequisites for a finding that they do not constitute compensable time. First, each period was 30 minutes or longer, and opportunity was provided the plaintiff to completely leave the work premises. Wirtz v. Healy, 227 F.Supp. 123 (D.C. Ill.1964). Second, plaintiff was completely relieved of all of his duties during these periods. Wirtz v. Minton Rendering Co., 54 CCH Lab.Cas. ¶ 31,876 (D.C.Tex.1966). Third, plaintiff was free to leave his post of duty.[9] The fact that plaintiff chose to remain at his desk during the coffee-break and lunch hour to answer the phone or catch up on work does not transform these noncompensable periods into hours worked. Thomas v. Peerless Carbon Co., 62 F. Supp. 154, 155 (D.C.Tex.1945).

Plaintiff's reliance on the general statement in § 785.11, 29 C.F.R., that "Work not requested but suffered or permitted is work time," does not assist plaintiff, given the circumstances of plaintiff's work situation. The cases cited in the above regulation indicate that the general rule is meant to cover a situation where the circumstances of a worker's employment require that he remain on duty during break periods, even though the time is not technically observed as "work time." In Handler v. Thrasher, 191 F.2d 120 (10th Cir. 1951), for example, the plaintiff employee was required by his job contract to live on a 160-acre oil and gas leasehold and do whatever work was necessary to keep the oil wells under his supervision in op-

---

8. Report of the Special Master, 6.

9. Nowhere does plaintiff allege that he was required to remain in his office during coffee-break and lunch periods.

eration. While the employee was technically employed for a five-day week, the Court of Appeals found that the nature of his work effectively required him to be on duty for varying hours seven days a week, and that the time he spent on Saturdays and Sundays supervising the wells was fully compensable. The remaining cases cited in support of the regulation similarly illustrate the disparity between the work situations sought to be covered and plaintiff's desire to drink coffee and eat a sandwich at his desk rather than leave the office.

■ Similarly, the court finds inapplicable to the present case the language relied on by plaintiff in Section 785.13 of 29 C.F.R., which reads: "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." This statement is supported by no decisional authority, and the court finds that it relates to the general proposition, not applicable here, that an employer cannot *sub silentio* "expect" his employee to continue working in his regular employment capacity during nominal break periods without providing compensation. Examples of work situations to which this rule would seem to be applicable are found in the cases cited in support of 29 C.F.R. § 785.11. Here, the master could clearly find, in light of plaintiff and his fellow staff members leaving the premises on a frequent basis, that there was no clear "expectancy" that plaintiff remain at his desk or risk the disapproval of his superiors. *Cf.* Devine v. Joshua Hendy Corp., 77 F.Supp. 893 (D.C.Cal.1948).

Plaintiff's argument that the coffee-break period was considered and treated by defendant as compensable work time, and therefore must be counted as hours worked, is based on 29 C.F.R. § 778.320, which provides: "In certain cases an agreement provides for compensation for hours spent in certain types of activities which would not be regarded as working time under the act if no compensation were provided. . . . [T]ime spent in eating meals between working hours falls in this category. The agreement of the parties to provide compensation for such hours implies an agreement to regard them as working time although they are not otherwise required to be so regarded under the Act." The master totally ignored plaintiff's argument that his weekly compensation included pay for the coffee-break period, and that there existed an implied agreement that the daily 30-minute period was to be regarded as work time. The court recognized the master's failure to treat this argument, and in its order of February 15, 1973, specifically urged the parties to address themselves to the issue at the May 4, 1973 hearing. Plaintiff's strongest argument is that while time slips submitted by the Journal's employees reflected on their face a deduction of one hour for the lunch period, no deduction appeared for the 30-minute coffee-break. Plaintiff's assertion that the coffee-break period was intended to "compensate" employees for the early morning reporting hours adds little to the question of whether plaintiff's weekly pay check was intended to cover time spent by plaintiff on the coffee-break, as rightly pointed out by defendant.

■ Considering this argument de novo, the court has before it plaintiff's assertion that the coffee-break time was considered to be compensable time by defendant as illustrated by the absence of any deduction appearing on the time slips. In rebuttal defendant has argued that it was paying only for work actually done, and that the circumstances attendant to the coffee-break period would make the time noncompensable in the absence of an agreement. It is admitted by all concerned that defendant failed to keep accurate records of hours logged by its employees. Consequently, plaintiff may avail himself of the rule in Anderson v. Mt. Clemens Pottery Co., 328 U.S.

680, 687, 688, 66 S.Ct. 1187, 1192, 90 L. Ed. 1515 (1946), that where an employer has not kept accurate records, and the plaintiff-employee produces enough evidence to show "as a matter of just and reasonable inference" that he has performed work for which he was not compensated, that the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of that inference to be drawn from the employee's evidence." In the case at bar, however, where the subject in dispute is not work done but an agreement, the burden remains on the plaintiff to show the existence of that agreement. This, the court finds, plaintiff has not done. The time slips, the master found, and as the plaintiff seems elsewhere to agree,[10] bear no relation to the number of hours actually worked by an employee. While the missing deduction for the coffee-break might be significant in a record system accurately reflecting the employment situation, such evidence, the court finds, does not satisfy plaintiff's burden here of proving by the preponderance of the evidence that there was a bargain between the parties, either explicit or implicit, on the subject of compensation for coffee-breaks. Admittedly the evidence against finding such an agreement is also sparse. Plaintiff, however, is the one who has the burden of establishing the proposition as true, and where the weight of the evidence is so evenly in balance, it is the defendant who must prevail.

### C. Failure of master to award liquidated damages.

■ Section 16 of the FLSA, 29 U.S.C. § 216(b), provides that "any employer who violates the provisions of [the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." The Portal-to-Portal Act of 1947 modified the above provision by stating in Section 11, 29 U.S.C. 260, that "if the employer shows to the satisfaction of the court that the act or omission giving rise [to the violation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act] as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [Section 16]."

In concluding that no liquidated damages could be awarded, the master failed to apply the appropriate standard set forth in the statute and explained in the regulations. As stated in 29 C.F.R. § 790.22(b), "The conditions prescribed as prerequisites to [the court's denial of liquidated damages] are two: (1) the employer must show to the satisfaction of the court that the act or omission giving rise to such action was in good faith; and (2) he must show also, to the satisfaction of the court, that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act. . . . . If . . . the employer does not show to the satisfaction of the court that he has met the two conditions mentioned above, the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages."

■ Instead of finding that these conditions were satisfied the master noted as his reasons that, "It was the policy of the defendant to pay overtime when it was reflected on the employee's timesheet and the plaintiff knew this," and that defendant's practice of giving compensatory time off in lieu of overtime was actually preferred by all the employees, including plaintiff, until he was fired. With regard to the latter manifestation of "good faith" the record establishes that the compensatory time-off plan was implemented wholly at the dis-

10. Plaintiff's Proposed Findings of Fact, at 3, 6.

cretion of the defendant, rather than in conformity with the applicable regulations, under 29 U.S.C. § 207. The master himself found that the "compensatory" plan did not comply with the requirement that compensatory time be given within the applicable pay period, but found nonetheless that "while this deviation fails to comply with the requirements, it is not such a deviation *as to demonstrate bad faith*." [11] (Emphasis supplied.) A finding that an unacceptable plan did not demonstrate "bad faith" cannot serve to support the necessary finding that defendant's failure to pay overtime was in "good faith," or that defendant had reasonable grounds for believing that it was not in violation of the Act. From the court's own review of the record in this case it finds that defendant has failed to meet its burden of showing reasonable grounds for believing that it was not in violation of the Act, and has therefore failed to establish "good faith."

Plaintiff has called the court's attention to the testimony of two of defendant's officers which establishes that the practice of awarding compensatory time was not systematic, but was conducted on an informal basis, overtime hours worked being offset by employees' getting "some hours back somewhere further along."[12] The court is further satisfied from the record that defendant knew that plaintiff worked more than a 40-hour week on several occasions, and that as a matter of course, at one time or another most of its employees in the sports department worked more than a 40-hour week. While defendant was aware that extra hours were being worked, it was not usual for the employees to record the extra hours on their weekly time slips, and no formal procedure was followed to ensure that a man who worked overtime hours would receive compensatory time off within the single workweek as required.

The following exchange between plaintiff's counsel and Thomas L. Mc-

Collister, Jr., assistant sports editor of the Journal from 1965 to 1969, illustrates the general attitude and policy of defendant toward overtime hours and time off:

"Q. . . . What did you do—what was your reaction or what —having this knowledge [that practically 'everybody' worked more than forty hours without turning in time slips reflecting overtime] what did you do about it?

A. We gave these people time off at different times.

Q. Different times.

A. Maybe next week, maybe that week, as soon as possible.

Q. Did you give extra time off at the end of the season?

A. Yes.

Q. Was it part of your duty to make sure that these overtime hours were turned in?

A. No.

Q. Did you consider it part of your duty?

A. No.

Q. What was your attitude toward the fact that they were not turning them in on the time sheets?

A. I had no attitude about it. I was told that when someone was approaching a forty hour week to let me know or let Mr. Minter know so they could be given time off, so they could leave.

\* \* \* \* \* \*

Q. The occasions that you spoke of that you or times that you know of that they were working over forty hours, were people coming to you and telling you 'I have worked over forty hours'?

A. No, sir.

Q. You were aware of this without their—without their telling you,

---

11. Master's Special Report, 20.

12. Transcript of Hearing [hereinafter "T."], at 718–719, 725, 1268.

is that correct: Is that what I understand you to say?

A. Yes, sir." [13]

Finally, it appears from the record that defendant knew that its informal system of awarding compensatory time was not in accordance with the law requiring overtime compensation or compensatory time to be awarded within the single workweek.[14] Defendant's agents revealed at the trial that they could not be certain that compensatory time was given within the single workweek, that in fact compensatory time was often given only after a "season" had been completed, and that in all probability there may have been some cases in which a relatively few hours of overtime worked in a single week were not compensated by compensatory time in the same week.

■ Defendant's argument that no overtime compensation was paid and no compensatory time was awarded plaintiff because he did not indicate overtime on his time slips, will not suffice as a "reasonable ground" for its violation. There is ample testimony in the record that defendant knew that overtime was being performed by its staff, including plaintiff, and that such overtime was rarely reflected on the time slips. What function, if any, these time slips served in defendant's record-keeping system remains a mystery to the court, but in any event, their admitted and consistent inaccuracy [15] cannot be used by defendant to justify its failure to perform its obligations under the FLSA. If the nature of defendant's business made the strict overtime requirements of the Act burdensome, in light of the widely fluctuating hours of its staff, it had at least two alternatives. Either it could have established a system of compensatory time off which complied with the requirements of the Act, or it could have availed itself of subsection (f) of 29 U. S.C. § 207, which recognizes the existence of exceptional circumstances, and provides for resolution of any conflict with the Act through an individual contract with its employees. It did neither of these, and has offered no reasonable grounds for its failure to comply with the Act.[16] Liquidated damages must be awarded. See McClanahan v. Matthews, 440 F.2d 320 (6th Cir. 1971).

D. Failure of the master to apply the three-year statute of limitations.

■ Section 6 of the Portal-to-Portal Act of 1947, as amended, 29 U.S.C. § 255, provides that suit under the FLSA must be commenced within two years after the cause of action accrued, or be forever barred, but that a cause of action arising out of a wilful violation may be commenced within three years after the cause of action accrued. The master found, on the basis of his dispo-

13. T. 1268–1269. See also T. 725.

14. See § 778.104, 29 C.F.R.; Roland Electric Co. v. Black, 163 F.2d 417 (4th Cir. 1947); Mitchell v. Gatlin, 179 F.Supp. 260, 262–263 (S.D.Miss.1959), aff'd 287 F.2d 76 (5th Cir. 1960), cert. denied 366 U.S. 963, 81 S.Ct. 1925, 6 L.Ed.2d 1255 (1960). Defendant's knowledge of this requirement was testified to by McCollister and by James G. Minter, executive sports editor of the Journal from 1962 through 1970 and currently managing editor of the Atlanta Constitution. See T. 1318–1320, 729.

15. See infra, at 897–899.

16. The difficulty with the informal arrangement used by defendant, paradoxically, is illustrated by the special master's comment offered in support of defendant's lack of "bad faith." Said the master at page 20 of his report: "While I might be engaging in judicial hypothetication, I suspect that if plaintiff had turned in the hours on his timesheet that he now claims to have worked that he would have been paid for those hours and he would have been terminated and replaced with a writer who could do the job in 40 hours; albeit, perhaps not as well as plaintiff did." It is precisely to prevent employers from, in effect, advising their employees that they will put in for overtime at the risk of being fired that the FLSA was passed. Certainly, the employer may replace inefficient workers with efficient workers, but the law does not allow an employer to keep his employees working overtime without providing the legally required compensation under the threat of losing their jobs if they request to be paid at the legal rate.

sition of plaintiff's claim for liquidated damages, that the violation was not wilful and so applied the two-year limitation. In light of the court's finding that the master's finding of "good faith" was clearly erroneous, and that it was not made according to the applicable legal standards, his finding that two years is the applicable statute of limitations is also rejected. Under the standard of "wilfulness" set forth by the Fifth Circuit Court of Appeals in Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir. 1972), the court finds that defendant knew or suspected that its haphazard policy of awarding compensatory time off, in lieu of a regular policy of paying compensation for overtime worked, or providing days off within the workweek, "might violate the FLSA."[17] The three-year statute of limitations must therefore be applied, and the case will be remanded to the master for a determination of which hours claimed for the period of August 26 through September 18, 1968, if any, are entitled to overtime compensation.

III. DEFENDANT'S OBJECTIONS

A. Failure of master to correctly determine plaintiff's hourly rate in the award of overtime compensation.

Depending on the nature of the job in question, the applicable regulations of the Wage and Hour Division provide different methods for calculating an employee's "regular hourly rate of pay," a figure necessary to determine an employee's overtime compensation once the number of overtime hours he has worked is found. In his report, the master found that "the overtime wages due plaintiff must be computed at one and one-half times the regular forty hour rate."[18] This regular hourly rate of

pay, he determined, was to be computed by dividing plaintiff's weekly salary by the number of hours which the salary was intended to compensate, which he found was a regular forty-hour week. 29 C.F.R. § 778.113.

Defendant objects that plaintiff was paid a fixed salary for fluctuating hours of work, not for a straight 40-hour week, and that his regular hourly rate must be determined by "dividing his total remuneration for employment (except for statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The method of computing overtime appropriate to an employment situation where salary is intended to cover a fluctuating number of hours is set forth in 29 C.F.R. § 778.114:

*"Fixed salary for fluctuating hours.*

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. . . . Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime

---

17. That defendant was aware that the "FLSA was in the picture", 458 F.2d at 1142, is indicated by Minter's statement that he suspected plaintiff was preparing a case to take before the Wage and Hour Division: ". . . [F]rom his conversation I felt like he was doing, and like I told him, what

you are saying, what you are trying to do, you are trying to work yourself up a wage and hour case, that is what I told him." T. 814.

18. Report of the Special Master, 16.

pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."

The master disagreed that this latter method of computation was the appropriate one for the employment arrangement in this case, stating "The evidence does not support this view."

Upon reviewing the transcript of the hearing, deposition testimony by numerous employees, and the findings of the master himself, it is clear beyond question that the evidence supports *only* the "fluctuating hours" method of computation, and that the master's finding to the contrary is clearly erroneous. In support of his determination to use the "fixed hours" method, the master states that "the timesheets provided by the defendant were preprinted with the total number of non-overtime hours shown as '40'. In addition to this, on isolated occasions when this plaintiff and others were paid overtime wages, those wages were computed at a rate equal to one and one-half times his forty hour rate." But elsewhere in his report the master has recognized that the preprinted "40" hour time sheets submitted by the employees bore no relation whatsoever to the actual number of hours worked by an employee in any given week. As he states on page 10 of the report: "The days worked and hours worked as reflected on the timesheets bear no real relationship to actual days and hours worked. I find that the evidence reflects that the managing agents of defendant knew that inaccurate timesheets were being turned in by its employees."

Plaintiff, who would prefer to have his overtime figured on a time and one-half basis, admits numerous times in his proposed findings of fact that, "As defined by defendant, sports writers had no precise daily working hours, such being a function and product of the as-

signment themselves [*sic*]. Each individual had his own work day defined by his particular assignments and each day was defined as 'until you've completed your assignment. . . .' Plaintiff and staff reporters filled out inaccurate time slips by placing five '8' hour work days and two 'off' days in the seven days of the week designated on the time slip, without regard as to the accuracy of either the designated number of hours worked each day or the day as to when these hours were actually worked. . . . The actual range of hours for plaintiff's fellow staff members was from over 30 worked hours to 45, 50, 55 and up to 60 hours worked in work weeks."[19] Testimony by Minter, McCollister and other witnesses at the hearing clearly demonstrates that plaintiff and defendant's other employees were being paid a fixed salary for hours which could vary significantly during a given week and that there was a general understanding to that effect,[20] regardless of what rate defendant used on isolated occasions to pay overtime.

Accordingly, it will be necessary for the master to recompute the overtime compensation owing to plaintiff, using an hourly rate based on the actual number of hours worked by plaintiff during a given workweek, in accordance with the method of determining overtime compensation outlined in 29 C.F.R. § 778.-114.

B. Failure of master to disallow overtime claimed for holiday weeks.

At page 17 of his report, the master found that for the week ending December 1, 1968, plaintiff worked 39.5 hours and was entitled to 7.5 hours of overtime compensation. He found also that for the week ending December 29, 1968, plaintiff worked 39 hours and was entitled to seven hours of overtime. The master's finding of overtime was

19. Plaintiff's Proposed Findings of Fact, 3.

20. T. 46–48, 1270–1273, 79–82, 1309–1310, 918, 98, 99, and other points in the transcript cited at page 3 of Plaintiff's Proposed Findings of Fact.

apparently based on the fact that a holiday occurred in each week (Thanksgiving and Christmas, respectively) and that plaintiff's regularly required workweek was thus reduced to 32 hours. His finding of overtime for these two weeks is erroneous as a matter of law. The FLSA requires overtime compensation only for a workweek longer than *forty* hours. 29 U.S.C. § 207(a)(1). As stated in § 778.102, 29 C.F.R., "The Act does not require . . . that an employee be paid overtime compensation for hours in excess of eight per day, or for work on Saturdays, Sundays, holidays or regular days of rest. If no more than the maximum number of hours prescribed in the Act are actually worked in the workweek, overtime compensation pursuant to section 7(a) need not be paid." Plaintiff has failed to show the existence of any contractual obligation on defendant's part to pay overtime for hours worked in excess of a 32-hour holiday week, and on remand the master will recalculate the total overtime compensation owing to plaintiff, omitting the compensation attributed to alleged overtime worked during the weeks ending December 1 and 29, 1968.

## IV. COSTS AND ATTORNEYS' FEES

Plaintiff objects strenuously to the master's drastic reduction of plaintiff's claimed costs and attorneys' fees. Plaintiff alleges that the following amounts are owed him by defendant:

| | |
|---|---:|
| Attorney's fees | $ 6,000.00 |
| Depositions | 2,451.60 |
| Transcript | 2,385.13 |
| Witness fees and mileage | 273.00 |
| Miscellaneous costs (marshal's fee, filing fee, costs bond) | 71.08 |
| TOTAL | $11,180.81 |

The master found that plaintiff overtried his case. He found that plaintiff had proved 11% of the damages claimed, $494.06 out of a claimed recovery of $4,404.38. He found that the trial lasted longer than necessary and that fully 80% of the transcript involved the plaintiff's case and 20% the defendant's

case. Of the fourteen depositions taken, the master found that only one was admitted in evidence, the rest being used to refresh the recollection of witnesses. On the basis of these considerations the master recommended that each side pay one-half the total transcript cost, that defendant pay plaintiff $269.68 for cost of depositions, and that allowing plaintiff 11% of the remaining costs claimed, that defendant should pay plaintiff $37.-85 for miscellaneous expenses. Attorney's fees of $1,000 were awarded.

The court emphatically agrees that plaintiff overtried his case. It finds, however, that the master's award of costs and attorneys' fees is unreasonably low in light of the public interest in enforcing the FLSA through private litigation and the master's own order allocating the burden of paying the transcript costs to the party who did not prevail.

Section 16 of the FLSA, 29 U.S.C. § 216, provides that, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." There can be no argument that this provision, like similar provisions in other statutes, encourages attorneys to undertake what may be difficult lawsuits based on employer violations of the Act, by the promise that whatever may be the ultimate recovery (which for an individual plaintiff may be quite low), they will receive the costs of the action plus reasonable attorney's fees. The statutory award of costs and attorney's fees, however, cannot be taken by counsel as a blank check to prepare his case without reference to the costs involved. Usually, counsel's understandable desire to present the ultimate proof of his case and prepare the ultimate defense against his opponent's arguments is tempered by his realization that the cost of pursuing the action will at some point outstrip the relief likely to be gained. The economic factors at work in almost every lawsuit thus serve as a means of limiting the extent of litigation, in a very rough fashion to be sure, in accordance

**900**

with the seriousness of the injury sought to be remedied.

In this case, giving due regard to the public's interest in seeing that a violation of the FLSA is challenged and prosecuted, plaintiff's counsel, primarily through his calling and deposing a number of cumulative witnesses, has incurred costs beyond those reasonably contemplated by the statute. Plaintiff deposed some fourteen witnesses, including five sports writers currently with the Journal, five persons currently in the management of either the Journal or its sister paper, the Atlanta Constitution, and three persons currently having no employment ties with either the Journal or the Constitution. Jesse L. Outlar, Sports Editor of the Atlanta Constitution, was deposed for 47 pages and gave testimony at trial sufficient to fill only three pages of the trial transcript. Fred Wright Brown, currently Sunday Editor with the Pensacola News Journal, gave deposition testimony of 133 pages, which was clearly cumulative of the testimony of at least five other sports writers either presently with the Journal or who served at the Journal at the time of plaintiff's employment. Without cataloging in detail the number of unnecessary or overlapping witnesses, the court finds that a number of depositions cannot reasonably be said to have been obtained for use in the case. The court does recognize, however, that deposition testimony was necessary for plaintiff to examine several other witnesses who were under the direct or indirect control of defendant.

■ Allowing the greatest latitude in favor of proper preparation, the court finds that the depositions of ·Minter, McCollister, three sports writers and two witnesses presently in management positions with the Journal, were reasonably necessary to the conduct of plaintiff's case. Defendant will therefore pay plaintiff the costs of these depositions in the amount of $1,651.80. In keeping with its determination that only one-half of plaintiff's witnesses were necessary to the case, the court will order defendant to pay plaintiff $136.50 for witness fees and mileage expense.

■ With respect to the cost of the trial transcript, the court finds that it is bound by the master's order of May 15, 1972, which reads in relevant part: "Counsel for the parties are directed to mutually agree on, and arrange for a court reporter to take down and transcribe the evidence in this matter and to file an original with the Court and such copies as counsel desire, the expense for which will be taxed as cost against the party who does not prevail in this action." Insofar as the court is aware, this order was never withdrawn or modified and plaintiff was entitled to rely on its terms. Defendant shall therefore pay the cost of the trial transcript in the amount of $2,385.13.

■ The trial lasted eight days, was found to be unnecessarily long, and the master awarded plaintiff attorney's fees of $1,000. The court finds that this sum is appropriate for the in-court time of plaintiff's counsel, but finds that an additional $1,000 is reasonable for counsel's necessary out-of-court preparation.

In summary, the following costs are charged to the defendant:

| | |
|---|---|
| Attorney's fees | $2,000.00 |
| Depositions | 1,651.80 |
| Transcript | 2,385.13 |
| Witness fees and mileage | 136.50 |
| Miscellaneous costs | 71.08 |
| TOTAL | $6,244.51 |

## V. CONCLUSION

For the reasons set forth in the foregoing opinion the master's report is affirmed in part and reversed in part, as follows:

(1) The master's finding that an award of liquidated damages was not warranted is reversed;

(2) The master's finding that the applicable statute of limitations to this action was two years rather than three years, as set forth in 29 U.S.C. § 255, is reversed;

(3) The master's finding that plaintiff's "regular hourly rate" was to be

computed on the basis of dividing plaintiff's salary by a fixed weekly total of 40 hours, is reversed;

(4) The master's award of overtime compensation for the weeks ending December 1, 1968 and December 29, 1968 is reversed;

(5) The master's award of costs in the amount recommended is reversed; and

(6) In all other respects the report of the special master is affirmed.

In light of the foregoing, the above-captioned case is hereby remanded to the special master for a recomputation of the overtime compensation owed plaintiff by defendant, not inconsistent with the findings of the court herein, and defendant is ordered to pay plaintiff costs and attorney's fees in the amount of $6,244.51.