Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

SECURITY BANK AND TRUST COMPANY, Defendant-Appellee.

No. 76–1489.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 26, 1977.

Decided March 22, 1978.

Lois G. Williams, Atty., Columbus, Ohio (William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Washington, D. C., and Ronald Gaswirth, Regional Sol., U. S. Dept. of Labor, Dallas, Tex., on the brief), for plaintiff-appellant.

Eddie Y. Newcombe, Atty., Lawton, Okl., for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The Secretary of Labor brought this action to enjoin the Security Bank and Trust Company of Lawton, Oklahoma from violating the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207, and the equal pay provisions of the Equal Pay Act, 29 U.S.C. § 206(d), and to enjoin the continued withholding of back wages due as a result of such violations.

The Secretary alleged that seven bank employees worked more than forty hours per week without being paid overtime compensation. The Bank contended that these seven employees were exempt from the overtime requirement because they worked in executive or administrative capacities within the meaning of 29 U.S.C. § 213(a)(1). The Bank also argues that the Secretary failed to establish, even *prima facie,* that any of the seven had actually worked more than forty hours per week. On the issue of overtime pay, the trial court, sitting without a jury, found that five of the seven

employees were exempt under 29 U.S.C. § 213(a)(1), and that the remaining two, though not exempt under 29 U.S.C. § 213(a)(1), had not in fact worked in excess of forty hours per week.

Regarding the alleged violations of the equal pay requirements of 29 U.S.C. § 207, it was the Secretary's basic position that female tellers in general, and female supervisors in certain instances, were paid less than male tellers and supervisors performing substantially the same work. It was the Bank's position in this regard that any disparity in pay between female and male employees was based on factors other than sex. The trial court held that the male employees did have extra and different duties which rendered the jobs unequal. The trial court emphasized that several of the male employees were not regarded as being permanent tellers, but were being trained in all aspects of the banking business for future placement in managerial positions as senior officers at the Bank.

The Secretary now appeals. In our view, the resolution of this appeal is largely governed by the clearly erroneous rule of Fed. R.Civ.P. 52(a). Believing that the findings of the trial court relating to the issue of overtime pay are not clearly erroneous, we affirm the judgment as it relates to overtime pay. On the matter of equal pay, however, we conclude that the trial court's findings are inadequate and apparently based, in part, on improper standards. As to that aspect of the case we reverse and remand for further proceedings.

### Overtime Pay

29 U.S.C. § 207 provides, in effect, that no employee covered by the Act shall work more than forty hours per week unless he, or she, receives compensation for such employment in excess of the forty hours at a rate of not less than one and one-half times the regular rate of pay. 29 U.S.C. § 213(a)(1) provides that the foregoing statute does not apply to any employee employed in a bona fide executive, administrative or professional capacity. The terms "executive" and "administrative" are defined at 29 C.F.R. § 541.1 and § 541.2.

The trial court found that employees Joann Houghton, Margaret McCrackin, Galen Robinson, Patsy Shrive and James Vineyard were at all material times employed by the Bank in bona fide executive or administrative capacities, under 29 U.S.C. § 213(a)(1), and were excluded from the overtime pay provisions of 29 U.S.C. § 207. As to the two remaining employees, Jo Ann Valdez and Shirley Wyndon Warren, the trial court found that these employees did not perform work that would qualify them as either "executive" or "administrative" and thus were not within the exclusion provided for in 29 U.S.C. § 213(a)(1). However, the trial court further found that the Secretary had failed to meet his burden of proving by a preponderance of the evidence that these two employees had in fact worked in excess of forty hours in any particular week.

The determination of whether an employee's duties are executive or administrative in nature so as to come within the exclusion set forth in 29 U.S.C. § 213(a)(1) is primarily a question of fact and a trial court's finding that the exclusion is, or is not, applicable cannot be set aside unless it is clearly erroneous. *Brennan v. South Davis Community Hospital,* 538 F.2d 859 (10th Cir. 1976). Our reading of the record leads us to conclude that the trial court's finding that employees Houghton, McCrackin, Robinson, Shrive and Vineyard are within the exclusion is not clearly erroneous. Four of these individuals had been promoted to assistant cashiers, and one, McCrackin, had been made an assistant vice president. Their respective duties involved not only actually performing Bank work, but also supervising or training other Bank employees. Under all the circumstances disclosed by the record, we must accept, on appeal, the trial court's finding that these individuals came within the exclusion set forth in 29 U.S.C. § 213(a)(1) and were thus not entitled to overtime pay, even assuming that they had in fact worked overtime.

As above mentioned, the trial court found that employees Valdez and Warren

did not qualify under 29 U.S.C. § 213(a)(1), but that neither had in fact actually worked in excess of forty hours in any particular week. The record in our view supports such a finding, and is in any event not clearly erroneous.

Bank employees who were truly employees, and not officials, "punched a clock" and their hours of work were a matter of record, and they were paid overtime in accord with 29 U.S.C. § 207. However, when a person was promoted from an "employee" status to a Bank officer, he, or she, then went on a "straight salary" and they no longer punched the clock. As to such persons, no record of hours actually worked was kept by either the Bank or by any of the individuals who testified at trial. Understandably, then, the testimony concerning hours actually worked in excess of forty hours in any one week was quite vague and hazy. The testimony of the witness Valdez was to the effect that she "generally" worked from "about" 8:15 a. m. until "about" 5:15 p. m. with 45 minutes off for lunch and 30 minutes for two 15-minute coffee breaks. The witness Warren testified that she generally worked from 8:15 a. m. until 4:45 p. m., with similar time off for lunch and coffee breaks.

Under the circumstances described above, the trial court did not err in holding that the evidence failed to establish that either Valdez or Warren had really worked more than forty hours in any particular week. And this same finding could well have been made as concerns the five persons who were found to come within the exclusion of 29 U.S.C. § 213(a)(1). Proof of hours worked in excess of forty hours per week was painfully thin. *Anderson v. McClemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1945) and *Hearnsberger v. Gillespie,* 435 F.2d 926 (8th Cir. 1970).

### Equal Pay

The Secretary also claimed that the Bank had violated 29 U.S.C. §§ 206(d)(1) and 215(a)(2) by paying its female tellers and supervisors less than it paid its male tellers and supervisors who were performing substantially the same work. The Bank's prime defense was that male employees who received more than female employees performing substantially the same work were engaged in a bona fide training program within the Secretary's interpretation relating to training programs. See 29 C.F.R. § 800.148. Under that interpretation, a training program, if bona fide, constitutes an exception to the Equal Pay Act. However, in this regard the trial court specifically found that the Bank did *not* maintain a "bona fide training program." Such finding is not challenged on appeal. Moreover, the court's finding in this regard is in line with such cases as *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 124, 38 L.Ed.2d 55 (1973); *Hodgson v. Security National Bank of Sioux City,* 460 F.2d 57 (8th Cir. 1972); and *Hodgson v. Fairmont Supply Co.,* 454 F.2d 490 (4th Cir. 1972).

Notwithstanding its finding that the Bank did not have a bona fide training program, the trial court went on to find that the male employees who receive higher wages than their female counterparts were being trained for "responsible positions" in the Bank and indeed were thought of as "potential bank executives." In this regard it would appear that the trial court was of the view that such fact justified the pay differential. However, having found that the Bank had no real training program, the trial court erred in taking into consideration the possibility of future promotion. Mere recognition by management of the ability of employees to "work their way up the ranks" does not constitute a training program and is immaterial in an equal pay suit. *Schultz v. First Victoria National Bank,* 420 F.2d 648 (5th Cir. 1969). Subjective evaluations of the employer do not take the place of a bona fide training program and, standing alone, cannot form the basis for salary discrimination based on sex. *Brennan v. Victoria Bank & Trust Company,* 493 F.2d 896 (5th Cir. 1974).

Eliminating the possibility of eventually being promoted to the front office as a valid ground for pay disparity, the only real issue that remains is whether there was

in fact unequal pay for equal work, and, if so, whether the disparity was due to sex discrimination, or to some factor other than sex which would constitute a valid basis for a pay differential. In this regard, the trial court did make some rather general observations. However, in a case of this type, general observations are not enough. The findings must be specific if an appellate court is going to make a meaningful review of the record. In the instant case, the issue of "equal work," for example, must be resolved on a case by case and a job by job comparison. The findings of the trial court on this phase of the case are inadequate.

The judgment, insofar as it relates to overtime pay, is affirmed. The judgment, insofar as it relates to equal pay, is reversed, and the case in that regard only is remanded to the trial court for further proceedings consonant with the views herein expressed.