James E. NIXON, et al., Plaintiffs,

v.

The CITY OF JUNCTION CITY, KANSAS, Defendant.

Civ. A. No. 87–2321–0.

United States District Court, D. Kansas.

Sept. 27, 1988.

Michael P. McKone, Roger L. Unruh, McKone & Unruh, Chartered, Junction City, Kan., for plaintiffs.

Anthony F. Rupp, Shugart, Thomson & Kilroy, P.C., Overland Park, Kan., W. Terrence Kilroy, Jack L. Campbell, Shugart, Thomson & Kilroy, P.C., Kansas City, Mo., J. Steven Pigg, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This action arises from an employment dispute between the City of Junction City, Kansas ("City") and thirty-one members of the City's police force (21 patrolmen, 3 lieutenants, 3 sergeants and 4 investigators). Plaintiffs claim the City has violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA), by failing to pay overtime. Additionally, plaintiffs make claims for overtime pay under both a quantum meruit and an implied contract theory. The matter is now before the court on the parties' cross motions for summary judgment.

In considering the parties' motions for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). According to the federal rules, summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Company v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

For the purposes of these motions, the uncontroverted facts are as follows. Plaintiffs are employees-at-will. Rules and policies governing overtime compensation are contained in the City Employees' Manual. During the period covered by this lawsuit, defendant paid time and a half for overtime hours worked in excess of forty hours per week, unless the excess time was court time, in which case the officers were paid only their regular hourly wages. Defendant concedes that it is liable under the FLSA for patrolmen's court time in excess of forty hours per week for the period April 15, 1986, to June 2, 1987.

Plaintiffs' meal periods are governed by written rules, contained in the general orders of the Junction City Police Department, and unwritten rules which have come to be accepted over a period of time. These rules include: (1) "Patrol officers shall be limited to one lunch period and two coffee (rest) breaks in any one tour of duty; none of which may be taken during the first full hour of the tour of duty. Lunch periods shall not exceed 30 minutes and coffee (rest) breaks shall be limited to 15 minutes each. One coffee (rest) break may be taken during the first four hours of duty and one during the last four hours of duty. They shall not be taken in conjunction with each other or with the lunch

period." General Order 101–5, Part I.A. ¶ 25. (2) "In the absence of orders to the contrary, lunch periods and coffee (rest) breaks may be taken at the discretion of the individual officer; provided that (1) the existing workload will not suffer by the officer's temporary absence, (2) the on-duty supervisor has been advised and authorizes the lunch or coffee (rest) break, and (3) the dispatcher is advised of the location where the officer is taking his or her break." *Id.* at ¶ 26. (3) "Officers on different patrol beats shall not take their lunch or coffee (rest) breaks together at the same location." *Id.* at ¶ 27. (4) Lunch periods may not be taken during the last full hour of the officer's tour of duty. (5) Police officers must stay in the defendant's corporate limits while on lunch break. (6) Police officers are expected to take their portable radios with them during their lunch break. Alternatively, officers must advise the dispatcher where they can be reached by telephone if they are not monitoring their radios. (7) Police officers are subject to call while on lunch breaks and are subject to the same response requirement. An officer is expected to respond to a crime committed in his presence, to injury accidents he observes and to all citizens who approach him during his lunch break. (8) Police officers may eat lunch at any location they choose. However, the officers are not to eat lunch at restaurants that serve alcoholic beverages. (9) Police officers are free to use their lunch periods for personal activities, but they cannot use their patrol vehicle for running personal errands. (10) As a practical matter, officers remain in uniform and have sidearms with them during lunch breaks. (11) The shift supervisor assigns patrolmen their lunch breaks at the beginning of each shift. If an officer is called into service during his scheduled lunch break, he is usually allowed to reschedule his lunch break later in the shift, if practical. If it is not practical to reschedule the lunch break, he will lose it. Sergeants and lieutenants do not have scheduled lunch breaks and may take their lunch break at any time; otherwise, the above-described rules apply to sergeants and lieutenants, as well as to patrolmen.

Police officers in Junction City were not subjected to frequent interruptions during their lunch periods as a result of being called to respond to emergencies. Police officers missed their entire lunch breaks on a sporadic basis.

Patrolmen's, lieutenants' and sergeants' pay varies according to the number of hours worked. Hourly wages are determined by rank and length of service with the department. Wage increases are based on the Chief of Police's recommendations, which are presented to the City Manager, who in turn presents them to the City Commission.

Defendant City established the following chain of command for the police department: (1) City Manager, (2) Chief of Police, (3) Assistant Chief of Police, (4) Division Captains, (5) Shift Supervisors, Lieutenants, Sergeants, and (6) Patrolmen. A lieutenant is the supervisor in charge on a shift. Except on day shift, a lieutenant is the highest ranking officer on duty. Only one lieutenant is on duty per shift. A lieutenant's primary duty is to supervise a specific unit of the police department for a specific period of time. A lieutenant is responsible for setting up the shift, assigning each patrolman a patrol area, assigning lunch periods, briefing the patrolmen about crimes committed during previous shifts and crimes under investigation, and supervising the patrolmen to make sure they work their assigned areas and fulfill their responsibilities. At all times, lieutenants supervise three or more patrolmen.

Lieutenants evaluate all patrolmen under their supervision. They review and approve all investigative reports filed by their patrolmen. Lieutenants are also involved with the discipline of patrolmen. They have the authority to give written reprimands and the authority to recommend suspensions or other disciplinary action. They do not have the authority to hire or terminate a patrol officer.

A lieutenant decides on a day-to-day basis how to utilize the patrolmen he supervises. He may assign an officer to work in plain clothes or to work specific kinds of crimes. Excluding the authority to allow

overtime on a sporadic basis, a lieutenant has no authority to set the number of hours a subordinate works or to set wages. In addition to his supervisory duties, a lieutenant has patrol duties.

Essentially, a sergeant has the same duties and responsibilities as a lieutenant. A sergeant's primary duty is the supervision of patrolmen on a shift. When a lieutenant is not present (two days per week), the sergeant is the sole supervisor. When a lieutenant is present, a sergeant is either a station supervisor or a street supervisor. A station supervisor works the front desk, taking all incoming calls, handling citizens' complaints, supervising the dispatchers, and processing all administrative work. A street supervisor goes to a crime scene, decides what equipment is needed and directs the activities of the patrolmen.

Sergeants are responsible for setting up the duty roster. They have the authority to allow patrolmen to leave their shifts early, to call in the next shift early to assist in investigating a crime, and to redirect a patrolman's activities during his shift. Sergeants conduct monthly evaluations of all probationary patrolmen and quarterly evaluations of other patrolmen.

Lieutenants and sergeants earn over $250 per week. Lieutenants and sergeants are not paid overtime for working past the end of their shift to complete administrative duties.

The defendant City employs two kinds of investigators—labmen investigators and detective investigators. The qualifications for an investigator's position are the same as for patrolmen; i.e., a high school diploma or its equivalent. Becoming an investigator is the result of a discretionary assignment by the Chief of Police. It is not an increase in rank, nor is it an advancement.

A labman investigator's primary duties are processing crime scenes, collecting evidence, and examining evidence. Labmen learn their skills in short training courses. A detective investigator's primary duties are solving major crimes, investigating cases, initiating investigations, gathering intelligence information, and working undercover. Investigators use discretion and independent judgment in performing their duties.

Investigators earn in excess of $250 per week. Additionally, during the period covered by this lawsuit, investigators were paid $75 per pay period in lieu of overtime compensation. The $75 "premium pay" was not dependent on the number of hours an investigator worked and was not part of an agreement between the City and the investigators.

A. The FLSA Claims

In 1985, the Supreme Court overruled *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and held that the FLSA applied to employees of the states and their political subdivisions. *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Congress established April 15, 1986, as the date on which states and their political subdivisions must begin to comply with the FLSA's overtime provisions. Pub.L. 99–150, 99 Stat. 787 (1985).

Plaintiffs claim that defendant violated the FLSA by (1) failing to pay patrolmen, lieutenants and sergeants overtime for court time in excess of forty hours per week; (2) failing to pay patrolmen, lieutenants and sergeants overtime for two and one-half hours per week for lunch periods; and (3) failing to pay investigators overtime for time spent responding to calls while in an "on call" status. Defendant concedes that it violated the FLSA by not compensating patrolmen for court time in excess of forty hours per week at a rate of pay one and one-half times their regular hourly wage. Defendant denies all other alleged violations, claiming that lieutenants and sergeants are exempt from the FLSA's overtime provisions as executives, that investigators are exempt from the FLSA's overtime provisions as administrators, and that lunch periods are not compensable time because the officers are completely relieved of duty.

## 1. Court Time—Lieutenants and Sergeants

The defendant claims that lieutenants and sergeants are not owed overtime for court time in excess of forty hours per week because these officers are bona fide executives and therefore exempt from the FLSA's overtime provisions. The court notes that "[e]xemptions from the FLSA are to be narrowly construed against the employer [, and] [t]he burden of proof is on the employer to establish an exemption." *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141 (3d Cir.1983) (citing *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959), *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966)). Therefore, defendant must prove "by clear and affirmative evidence," *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984), that police lieutenants and sergeants come within the "bona fide executive" exemption of 29 U.S.C. § 213(a)(1). Because lieutenants and sergeants earn in excess of $250 per week, defendant must prove that (1) lieutenants' and sergeants' primary duty is the management of the enterprise or a recognized department or subdivision; (2) lieutenants and sergeants customarily and regularly direct the work of two or more employees; and (3) lieutenants and sergeants are compensated on a salary basis. 29 C.F.R. § 541.1(f) (1987). The regulations further delineate what constitutes "management" (§ 541.102), "primary duty" (§ 541.103), "two or more other employees" (§ 541.105), and "salary basis" (§ 541.118). Determining whether an employee comes within the exclusion set forth in 29 U.S.C. § 213(a)(1) is primarily a question of fact. *Marshall v. Security Bank & Trust Co.*, 572 F.2d 276, 278 (10th Cir.1978).

■ After reviewing the excerpted depositions of the lieutenants and sergeants, as well as the parties' statements of facts and arguments, the court has concluded that genuine issues of material fact still exist regarding whether the lieutenants and sergeants are compensated on a salary basis rather than on an hourly basis, and whether their primary duty is management. If lieutenants and sergeants are paid on an hourly basis, defendant is not entitled to the exemption. *See Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480, 484 (D.Md.1982) ("If employees are actually paid on an hourly rather than a guaranteed salary basis, regardless of the kind of duties performed, they are covered by the wage and hour laws."). Likewise, if lieutenants' and sergeants' primary duty is not management, defendant is not entitled to the exemption. *See Guthrie*, 722 F.2d at 1145 (being "in charge" does not necessarily mean that an employee has a primary duty of management). Because genuine factual issues remain to be decided before defendant's entitlement to the bona fide executive exemption can be determined, the court cannot grant summary judgment to either party on the issue of whether lieutenants and sergeants must be paid overtime for court time in excess of forty hours per week.

## 2. Lunch Periods

Plaintiffs claim that their lunch periods are compensable work time and that they are therefore entitled to overtime under the FLSA for thirty minutes per work day (or 2½ hours per work week). Defendant contends that plaintiffs' lunch periods are bona fide meal periods, and thus not compensable. To qualify as a bona fide meal period, the "employee must be completely relieved from duty for the purposes of eating regular meals.... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19 (1987).

■ The defendant did not dispute plaintiffs' statement of uncontroverted facts, and the plaintiffs disputed only defendant's statement that the officers had no duties to perform; therefore, no issues of fact remain to be decided and summary judgment is appropriate. After careful consideration, the court concludes that the police officers' lunch periods are compensable work time under the FLSA.

The focus of the court's ruminations has been whether the officers are *completely*

relieved of duty on their lunch periods. We find that they are not. Although the officers may eat anywhere within the corporate limits of Junction City, they must inform the dispatcher of their location and must continue to monitor their portable radios or be reachable by telephone. By remaining available for calls, the officers are not completely relieved of duty. *See, e.g., Weeks v. Chief, Washington State Patrol*, 96 Wash.2d 893, 639 P.2d 732, 734 (1982). Additionally, as a practical matter, the officers must remain in uniform and armed during their lunch periods and must continue to perform the duties that they perform throughout their shift, *i.e.*, observing, being observed, and responding to emergencies, crimes and citizens. Thus, the officers are not completely relieved of duty. *See Biggs v. Joshua Hendy Corp.*, 183 F.2d 515, 520 (9th Cir.1950). Although they may infrequently be required to take affirmative action during their lunch periods, the court has determined that these officers are nevertheless on duty during their lunch periods simply because they are required to take appropriate action whenever the need arises. *See Culkin v. Glenn L. Martin Nebraska Co.*, 97 F.Supp. 661, 669 & 673 (D.Neb.1951), *aff'd*, 197 F.2d 981, *cert. denied*, 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 671 (1952). Despite the fact that officers are allowed to attend to personal activities during their lunch periods, the deposition testimony left the court with the impression that the defendant discouraged such activities and made it impractical to run personal errands (*e.g.*, the officers are not allowed to use the patrol cars for personal business). Consequently, the court accords little weight to the fact that officers can spend their lunch periods as they please. Whether the officers use their lunch periods to eat, to rest, or to attend to personal business, they still must remain on call and available to respond as though they were on patrol. These facts do not support the conclusion that the plaintiffs are *completely* relieved of duty. Accordingly, the court finds the lunch periods to be compensable under the FLSA as work time.

The cases defendant cites in support of its argument do not deter the court from its conclusion. The recent Kansas Supreme Court case, *Atteberry v. Ritchie*, 243 Kan. 277, 756 P.2d 424 (1988), is easily distinguishable. First, the case was not decided under the FLSA. Second, compensation for meal periods was the subject of a negotiated agreement. Therefore, the court finds *Atteberry* unpersuasive. In *Hill v. United States*, 751 F.2d 810 (6th Cir.1984), the Sixth Circuit concluded that a postal employee's lunch period was not compensable work time because he performed no substantial duties, nor was he required to conduct postal business, during his lunch period. *Id.* at 812. Similarly, the district court in *Clark v. Atlanta Newspapers, Inc.*, 366 F.Supp. 886 (N.D.Ga.1973), concluded that a reporter's lunch periods were not compensable because he was completely relieved of duty. *Id.* at 892. The court finds that the officers continue to perform "substantial duties" during their lunch period by virtue of their on call status and are therefore not completely relieved of duty. Consequently, *Hill* and *Clark* are distinguishable. Finally, the court finds *Agner v. United States*, 8 Cl.Ct. 635, 27 WH Cases 515 (1985), *aff'd*, 795 F.2d 1017 (Fed.Cir.1986), distinguishable on its facts: the duties of a guard at the Library of Congress and the duties of a patrolling police officer are not comparable.

As an alternative to its argument that plaintiffs' lunch periods are not compensable, defendant contends that the overtime exception contained in 29 U.S.C. § 207(k) applies. Section 207(k) "provides an exception to the general provisions that prescribe a 40–hour work week and overtime compensation for hours worked over 40[ ]" for firemen and law enforcement officers. *International Ass'n of Firefighters, Local 349 v. City of Rome, Georgia*, 682 F.Supp. 522, 526 (N.D.Ga.1988); *see also LaForte v. Horner*, 833 F.2d 977, 979 (Fed.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988); *Zumerling v. Devine*, 769 F.2d 745, 746–47 (Fed.Cir.1985). By enacting section 207(k), Congress adopted a tour of duty/work period stan-

dard for determining firefighters' and law enforcement officers' entitlement to overtime. 29 C.F.R. §§ 553.201 and 553.230 set the standards for overtime. If a law enforcement officer works more than 86 hours in a 14–day work period, he is entitled to overtime compensation for the excess hours. *Id.* § 553.230(b) and (c).

Defendant contends that its officers come within this exception; thus, even if lunch periods are compensable time, the officers are not entitled to overtime because they work only 85 hours in a 14–day work period. By a declaration dated June 11, 1987, the City established a 14–day work period, effective June 3, 1987. According to the City Manager's and Police Chief's affidavits, this declaration did not establish a new work period, but instead confirmed the existence of a 14–day work period, which had been in place for many years.

As used in section 207(k), the term "work period" means "any established and regularly recurring period of work." 29 C.F.R. § 553.224(a) (1987). The question before the court is whether the 14–day work period was established prior to the declaration dated June 11, 1987. If the City had an established 14–day work period as of April 15, 1986, the date the FLSA became applicable to the City's employees, section 207(k) would preclude the plaintiffs from receiving overtime compensation for their lunch periods. If the June 11th declaration established a new work period, defendant cannot avoid paying overtime under section 207(k)'s exception.

■ The court cannot determine from the record whether the City had an established 14–day work period. First, the City Manager's deposition contradicts his affidavit. In his affidavit, the City Manager states that the June 11th declaration did not represent the adoption of a new work period, while in his deposition, he testified that the July 11th declaration changed the City's work week policy in order to take advantage of the section 207(k) exception. These contradictory statements present a credibility issue which cannot be resolved on summary judgment. *See, e.g., Ken-*

*nett–Murray Corp. v. Bone,* 622 F.2d 887, 895 (5th Cir.1980). Second, the Police Chief states in his affidavit: "During the period that I have served as Chief of Police the police department has worked 14 day work periods and have [sic] paid all police officers every two weeks." Since a "work period" need not coincide with a pay period, 29 C.F.R. § 553.224(a) (1987), the Police Chief's statement, which links the work period to the pay period, does not convince the court that the City had an established 14–day work period prior to the June 11th declaration. Finally, the defendant's employee manual refers to a 40–hour work week, and makes no reference to a 14–day work period.

An *established* work period is a keystone to the section 207(k) exclusion. Because the court is unable to determine when the City established its 14–day work period, we cannot determine defendant's entitlement to section 207(k)'s exception at this time. Accordingly, the final decision as to the officers' entitlement to overtime compensation for their lunch periods must be made at trial.

Finally, defendant contends that even if lunch periods are compensable and section 207(k) does not apply, lieutenants and sergeants are nonetheless exempt from overtime as bona fide executives. 29 U.S.C. § 213(a)(1). As previously discussed, the court cannot determine from the facts before it whether lieutenants and sergeants come within the exemption for executive employees, thus precluding summary judgment.

### 3. Investigators' Time "On Call"

Plaintiffs claim that defendant owes investigators overtime compensation for time spent responding to calls while in an "on call" status. Defendant contends that investigators are exempt from the FLSA's overtime provisions as "bona fide administrators." 29 U.S.C. § 213(a)(1). "The regulations establish two tests for determining whether an employee is exempt as a bona fide administrative employee. Employees earning less than $250 per week are subject to the 'long test' of 29 C.F.R. §§ 541.-2(a)–(e) (1976), whereas those earning $250

or more per week are governed by the 'short test' as set forth in the proviso to § 541.2(e)(2)." *Donovan v. United Video, Inc.*, 725 F.2d 577, 580 (10th Cir.1984). Because the investigators earn more than $250 per week, the defendant must prove they meet the short test. To be exempt from the FLSA's overtime provisions as an administrative employee under the short test, the investigators must (1) be compensated on a salary basis at a rate of not less than $250 per week, (2) have as their primary duty the performance of office or nonmanual work directly related to management policies or general business operations of their employer or their employer's customers, and (3) exercise discretion and independent judgment. 29 C.F.R. § 541.2(e)(2) (1987).

■ Defendant has failed to establish by clear and affirmative proof that investigators are exempt as administrative employees. Although the court concludes that investigators do exercise discretion and independent judgment, the court cannot conclude from the record before it that investigators are salaried employees. *See* 29 C.F.R. § 541.118; *see also supra,* p. 477. The only excerpted deposition which mentions wages is investigator Klamm's deposition. According to Klamm, he regards his wage as hourly. Additionally, the court cannot determine at this time whether investigators' primary duty is related to the general business operations of their employer because the parties dispute the identity of the employer (defendant claims the police department is the employer, while plaintiffs claim the City is the employer), and because neither party has adequately discussed what the general business operations of the employer entail (which would seem necessary to determine whether the investigators' primary duty is related to those operations). Because factual issues remain to be resolved, summary judgment for either party is inappropriate. It will be left to the fact finder to determine whether the investigators are entitled to overtime compensation or are exempt as administrative employees.

## B. State Law Claims

### 1. *Plaintiffs' Motion for Summary Judgment*

■ Plaintiffs claim that defendant breached implied employment contracts from June 1, 1984, to April 14, 1986, by (1) failing to pay patrolmen, lieutenants and sergeants overtime for court time in excess of forty hours per week, (2) failing to pay patrolmen, lieutenants and sergeants for lunch periods, and (3) failing to pay investigators overtime for time spent responding to calls while in an "on call" status. Plaintiffs completely failed to present evidence or arguments supporting the existence of implied contracts. Instead, their brief simply assumes the contracts' existence. Needless to say, plaintiffs failed to meet their burden under Fed.R.Civ.P. 56 and summary judgment on their implied contract claims will therefore be denied.

### 2. *Defendant's Motion for Summary Judgment*

Defendant argues that the plaintiffs are not entitled to recovery under their state law claims because the defendant complied with its employee manual and because the plaintiffs failed to exhaust their contractual/administrative remedies. Since the parties dispute the existence of an implied employment contract, the court finds it difficult to rule on defendant's motion, which assumes that the City's employee manual represents the implied contract's provisions. That assumption seems inappropriate, considering that both parties stated that many of the City's policies and rules were unwritten. Suffice it to say that the court does not believe the parties have set forth sufficient facts from which we can make an informed ruling regarding the plaintiffs' state law claims. Accordingly, defendant's motion for summary judgment will be denied.

### C. Liquidated Damages and Attorneys' Fees

Pursuant to the Pretrial Order entered July 21, 1988, the proceedings have been bifurcated, with liability issues to be resolved first. Nevertheless, the plaintiffs

request the court to decide at this juncture whether they can recover liquidated damages and attorneys' fees. Such a determination is premature. The court will decide the propriety of liquidated damages and attorneys' fees after the liability issues have been resolved.

IT IS THEREFORE ORDERED that the parties' motions for summary judgment are denied.