**Lyle G. ARMITAGE, Jr.; James R. Davis; David R. Jamison; Mark G. Moore; Steven R. Edwards; and Larry D. Adams, Plaintiffs,**

v.

**CITY OF EMPORIA, KANSAS, Defendant.**

**No. 90–1222–K.**

United States District Court, D. Kansas.

Jan. 2, 1992.

---

W. Irving Shaw, Emporia, Kan., for plaintiffs.

Dale W. Bell of Helbert, Bell & Smith, Chartered, Emporia, Kan., Stanley E. Craven of Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the court for decision following a bench trial held on October 15 and 16, 1991.

The plaintiffs in this case are present and former detectives in the investigations section of the City of Emporia Police Department. The plaintiffs contend the defendant, the City of Emporia (City), violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by failing to compensate them for lunch periods and for time spent while on call.

Plaintiffs seek declaratory judgment, compensation and liquidated damages for the unpaid lunch periods and time spent while designated the on-call detective. In addition, plaintiffs assert the City's violation of the FLSA was willful, thereby expanding the applicable statute of limitations from two years to three years. 29 U.S.C. § 255(a). The City contends it did not violate the FLSA, willfully or otherwise, because the detectives were not on

duty during the lunch periods or while they held on-call status.

At the conclusion of the bench trial, the court directed the parties to prepare and submit suggested findings of fact and conclusions of law. The court heard oral argument on the parties' suggested findings of fact and conclusions of law on December 16, 1991. After hearing the oral arguments, the court announced its decision, finding that the City had violated the FLSA. The court also announced that it found the violations willful, thereby extending the statute of limitations from two years to three years. Finally, the court announced its decision to award liquidated damages.

Upon a more thorough examination of the facts and issues, the court now modifies its findings and conclusions announced at the December 16, 1991 hearing. As more thoroughly set forth herein, the court finds that the City violated the FLSA in failing to compensate the plaintiffs for lunch periods worked and time spent on standby status, contrary to 29 U.S.C. § 201 *et seq.* However, for reasons set forth herein, the court finds that the City did not willfully violate the FLSA, and thereby does not extend the statute of limitations. Finally, the court finds that liquidated damages are mandated.

### Findings of Fact

The plaintiffs are six current or former detectives employed by the City of Emporia Police Department. The parties have stipulated that although there was evidence presented regarding unpaid lunch periods when a plaintiff worked through lunch and regarding telephone calls when on call for which no compensation was received, no claim is made for those individual instances.

The terms of the plaintiffs' employment were subject to written rules, regulations and policies codified in the Personnel Regulations, the Employees' Handbook and an Operations Manual for the Police Department. (Pltfs.' Exs. 4, 5 & 6.) In addition, the detectives were subject to certain unwritten, informal rules enforced by the detectives' supervisors.

Prior to January 1, 1987, the detective section of the police department worked an 8–hour shift with a 30–minute paid lunch period. In 1987, the detective work schedule changed to a 9–hour shift with a 1–hour unpaid lunch period. (Pltfs.' Ex. 3.) Subsequently, on March 22, 1987, a "flex-time" plan was implemented to schedule the work shifts of the detective section. (Joint Ex. 12.) Under the flex-time plan, a detective was required to work an 8–hour shift between 7:00 a.m. and 5:00 p.m., with a 30–minute unpaid lunch period, not to be the first half hour or the last half hour of the shift. Longer lunch periods were allowed depending on the individual schedule of the detective. The purpose of the flex-time plan was to increase the availability of the detective unit after 3:00 p.m., provide the individual detective with a choice of hours, and reduce the amount of overtime generated at the end of a shift. (Fair Depo.)

Under the flex-time plan, detectives scheduled their lunch periods on a board in the secretary's office where they signed out when leaving the office. Detectives were authorized to use city vehicles when going to lunch but were not to use the vehicles for personal errands. When detectives elected to use a city vehicle during the lunch period, they were required to notify the dispatcher of their location when they arrived at their destination and at the conclusion of the lunch period. Travel time in a city vehicle was not considered part of the lunch period. The detectives believed they were on duty during the lunch period and carried portable radios with them or went to a location with a telephone during the lunch period.

As a practical matter, the detectives remained in uniform during the lunch period with a sport coat covering their firearm. The detectives were subject to being called back to active duty during their lunch periods, and in a limited number of cases were actually called by the police dispatcher to respond to duty. Detectives were expected to respond to crimes or accidents committed in their presence and were required to

respond appropriately to citizen complaints or inquiries. In addition, the detectives were not allowed to consume alcohol while on their lunch breaks. Although a longer lunch period was allowed under the flex-time program, prior approval by the supervisor was required and detectives generally limited their breaks to 30 minutes. Thus, detectives who elected to take a 30–minute lunch break were effectively limited to the Emporia area. Finally, evidence was presented which indicated the plaintiffs worked through their lunch periods on numerous occasions but did not receive compensation for the overtime, although an overtime request was made to the supervisor.

On April 30, 1990, the flex-time plan was abolished and detectives were scheduled to work 8–hour shifts including 30–minute paid lunch periods. (Pltfs.' Ex. 19.)

In addition to working their regularly scheduled shifts, the detectives were required to serve as a standby detective for one week out of every six. At the beginning of each year, a standby schedule and order of rotation was posted for the entire calendar year. A detective was on standby from 8:00 a.m. Monday to 8:00 a.m. the following Monday. When a detective was on standby, he was required to work the late shift and was the first one to be called in the event no detective was at work and one was needed.

The standby detective was paid $30.00 per week for standing by. In addition, whenever the detective was actually called to work, he was paid at time and one half his regular rate of pay for all the time actually worked, beginning with the time of the call. The detectives were not compensated for time on standby when they received calls but were not actually required to respond. The standby detective was actually called out to respond to duty an average of .27 times per day or 1.89 times per week.

The standby detective was provided a pager so that he could be contacted by the police dispatcher if the need arose. The standby detective was required to respond to each page within 10 minutes. Upon receiving a call, the detective exercised his discretion as to whether an actual response was necessary. However, if it was necessary for a detective to respond, he was expected to report within 20 minutes of receiving the call.

While on standby, the detective was limited to the geographic range of the pager, which was approximately 10 miles. Thus, the standby detective was effectively precluded from leaving the city for social or family functions. One detective testified that he was reprimanded for failing to respond to a call while on standby because he was outside the range of the pager. All of the detectives testified they were reluctant to go to movies or other functions which required an admission fee because of the possibility of being called out. The detectives also stated that they did not mow their lawns, use power tools or engage in other similar activities due to the inability to hear the pager.

When it was necessary for a standby detective to respond to a call, he was required to meet the standard dress code which included wearing a concealed firearm. Thus, the detectives hesitated to engage in sporting activities because of the need to respond in 10 minutes and the possibility of not reporting in appropriate dress and appearance. Nor did the detectives engage in major home repairs while on standby because of the need to clean up before reporting.

Detectives could not consume alcohol while on standby because of the possibility of the need to report and could not, as a practical matter, pursue outside employment. Finally, the detectives acknowledged they were permitted to trade standby shifts but did not generally do so.

### Conclusions of Law

#### 1. Compensability of Meal Periods

It is well settled that the provisions of the FLSA are applicable to states and municipalities. *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), *rehearing denied*, 471 U.S. 1049, 105 S.Ct. 2041, 85 L.Ed.2d 340, *cert. denied*, 488 U.S.

889, 109 S.Ct. 221, 102 L.Ed.2d 212 (1988); *International Ass'n of Fire Fighters, Local 2203 v. West Adams Count. Fire Protection Dist.,* 877 F.2d 814, 818 (10th Cir. 1989). Congress has established April 15, 1986 as the effective date upon which states and local governments must comply with the provisions of the FLSA. Pub.L. No. 99–150, 99 Stat. 787 (1985). In the present case, plaintiffs contend the City has violated the overtime pay requirements of the FLSA, 29 U.S.C. § 207, since the initiation of the flex-time plan on March 22, 1987.

 Plaintiffs claim they are entitled to compensation in the amount of one and a half times their regular pay for the 30–minute unpaid lunch periods they were required to schedule in addition to their 8–hour shifts under the flex-time plan. The City asserts the plaintiffs were not on duty during the lunch periods and thereby are not entitled to overtime compensation.

The Department of Labor has established guidelines to aid in the determination of whether or not a meal period is compensable. The court is not bound by the agency's interpretations, but considers them a useful guidepost. A bona fide meal period is not work time and thus not compensable. 29 C.F.R. § 785.19 (1991). In order to constitute a bona fide meal period, the employee must be completely relieved of duty, and if the employee is required to perform any duties while eating, whether active or inactive, he is not relieved. *Id.*

The standard for determining whether an employee is completely relieved of duty was set forth in *Wahl v. City of Wichita, Kan.,* 725 F.Supp. 1133 (D.Kan.1989); and *Nixon v. City of Junction City, Kan.,* 707 F.Supp. 473 (D.Kan.1988). In each of these cases, the court found that serious and substantial limitations and duties were placed on city police officers during their lunch periods.

In *Nixon,* members of the city police department were not compensated for lunch periods although the plaintiffs were expected to take portable radios with them during the lunch period or advise the dispatcher where they could be reached by telephone. In addition, the plaintiffs were expected to respond to any crime, accident or injury committed in their presence, and respond appropriately to citizen complaints and requests. The plaintiffs were prohibited from taking lunch together and were confined to the city limits, although in other respects the plaintiffs were allowed to select the restaurant of their choice for lunch, provided it did not sell alcohol. Finally, the plaintiffs were permitted to perform personal activities during their lunch period but were not allowed to use a patrol vehicle for such purposes. As a practical matter, plaintiffs remained in uniform and carried firearms during the lunch period. 707 F.Supp. at 475.

Under these facts, the *Nixon* court determined the plaintiffs were not completely relieved of their duties during the lunch period. The police officers remained available for calls during their lunch period, although such interruptions were infrequent, and were required to observe and respond to crimes, accidents, and citizens. 707 F.Supp. at 478.

In *Wahl,* "beat" police officers were subject to the same restrictions and responsibilities during their lunch period as the officers in *Nixon.* In addition, the beat officers were restricted from leaving their team area and could not read during their lunch period. 725 F.Supp. at 1136–37. This court found that the geographic limitations, the requirement to be available for calls, and the requirement to respond to criminal activity or citizen inquiry were all factors which effectively prevented the officers from being completely relieved of duty during their lunch periods. 725 F.Supp. at 1139.

In the present case, the court must find that the detectives were not completely relieved of duty during their lunch periods. The evidence shows that the plaintiffs believed they were on duty during their lunch periods and were required to advise the police dispatcher of their locations during the same periods. As a practical matter, the detectives not available by telephone during their lunch periods carried portable radios. Although the Emporia detectives

were not frequently called to active duty during their lunch periods, their *availability* for calls during lunch periods prevented them from being completely relieved of duty.

As in *Nixon* and *Wahl*, the plaintiffs in this case were expected to respond to crimes or accidents committed in their presence and were required to respond appropriately to citizen complaints or inquiries. These duties, which the detectives continued to perform during their lunch periods, necessitated that they take appropriate action whenever the need arose. The court also recognizes that the detectives were not precluded from running personal errands during lunch periods, but were not allowed to use a city vehicle for such purposes, thereby rendering them impractical.

Thus, regardless of whether the plaintiffs ate lunch at home or at a restaurant, or whether they jogged or conducted personal business during their lunch periods, they were available to respond to calls as though they were sitting at their desks or as at any other time during their shift. The requirement that detectives continue to observe and respond to crimes, accidents or citizen inquiries during their lunch periods precluded relieving them of all duties. Based upon the foregoing factors, this court concludes that substantial duties were performed during the plaintiffs' lunch periods and that they are entitled to overtime compensation for this time.

### 2. *Compensability of Standby*

■■■ In addition to their claim for compensation for lunch periods, the plaintiffs allege the City failed to pay them overtime compensation for their time spent on standby status. The City contends it did not violate the FLSA in refusing to compensate the plaintiffs for the standby time because the detectives did not perform compensable work during such time.

The test to determine whether standby time is compensable working time is whether the time is spent predominantly for the employer's benefit or for the employee's benefit. *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944),

*rehearing denied*, 323 U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945). Each case concerning this issue must be resolved according to its unique circumstances, thereby requiring consideration of the agreement between the parties, the nature and extent of the restrictions, the nature of the service and its relation to the waiting period, and all of the surrounding circumstances. *Skidmore v. Swift & Co.*, 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

The Department of Labor has adopted administrative regulations to aid in determining whether standby hours are compensable under the FLSA. The court recognizes that these regulations are not binding upon it, but serve as an informed judgment to which it resorts for guidance. 323 U.S. at 140, 65 S.Ct. at 164; *Wahl v. City of Wichita, Kan.*, 725 F.Supp. at 1139.

29 C.F.R. § 553.221 (1991) provides in part:

> (c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work....

> (d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

In *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir.1991), the appellate court upheld Judge Saffels' finding that on-

call time of public firefighters was compensable work time. The facts of *Renfro* are strikingly similar to the facts in the present case. In *Renfro*, the plaintiff firefighters were subject to call-back for a 24–hour period on the day following a tour of duty. Under the on-call system, the firefighters were not required to remain on the premises but were required to respond to the station within 20 minutes of receiving a call. The firefighters were called by a paging system an average of four to five times per day. If a firefighter missed a call, he was assigned a "white slip" as a form of discipline considered in evaluations and was sometimes assigned extra duties. Due to the range of the pagers carried by the firefighters, they were restricted to the city limits. The only other restriction placed on the firefighters during the on-call period was the use of alcohol. *Renfro v. City of Emporia, Kan.*, 729 F.Supp. 747, 748–49 (D.Kan.1990).

Under these facts, Judge Saffels determined the conditions of the on-call system were so circumscribed that it restricted the firefighters from effectively using the time for their personal pursuits. 729 F.Supp. at 751. In support of this conclusion, the court found the following factors were relevant: (1) the firefighters were required to hear their pagers at all times and report within 20 minutes of receiving a call or be subject to discipline; (2) the on-call period was 24 hours; (3) the frequency of the calls averaged three to five times per period; (4) other employment was impractical or impossible due to the high probability of receiving a call and the uncertainty of when it would occur; (5) the firefighters were precluded from engaging in group activities or activities requiring the expenditure of funds because of the need to respond immediately. 729 F.Supp. at 751–52.

This court finds that *Renfro* is controlling and concludes that under the FLSA the time spent on standby by the detectives was compensable work time. In this case, the plaintiffs were subject to standby status for one week out of every six weeks. Although the detectives were allowed to trade standby rotations, this was difficult to accomplish and was rarely done. The

detectives were required to respond to a call within 10 minutes and report to the station or scene within 20 minutes of receiving the call if conditions warranted. The detectives were required to report an average of 1.89 times per week; however, they received numerous calls throughout the week which did not necessitate an actual response. Nevertheless, the detectives could not anticipate which calls would require their presence.

While on standby, the detectives were effectively limited to the city limits due to the 10–mile range of their pagers. Detectives who missed calls were subject to reprimand and discipline. As in *Renfro*, the detectives were required to hear their pagers at all times and be ready to respond within 20 minutes. Thus, the standby status so restricted the detectives' time that they could not effectively use the time for their own purposes. The detectives hesitated to engage in group activities because of the possibility of being called to respond and the requirement to follow the dress code at such times. The detectives did not go to the movies or engage in other activities which required the expenditure of funds for the same reasons. The detectives were also effectively precluded from performing normal chores or repairs at home because of the need to hear their pagers at all times.

The City argues that *Renfro* is distinguishable because the determining factor in that case was the frequency in which the employees were called back to duty. The court does not find the argument persuasive. In *Renfro*, the court found that time spent on call was so restricted by the frequency of calls that the employees could not effectively use the time for their own purposes. 729 F.Supp. at 751. Nevertheless, the court also considered other relevant factors which effectively restricted the on-call time for use in personal pursuits. In addition to those factors discussed above, the court considered the nature of the employment and found that the firefighters' duty to remain alert while lying in wait for emergencies was a benefit

to the employer and thus compensable. *Id.* at 753.

The court is not persuaded by the City's argument that this case is governed by *Boehm v. Kansas City Power and Light Co.,* 868 F.2d 1182 (10th Cir.1989); or *Norton v. Worthen Van Service, Inc.,* 839 F.2d 653 (10th Cir.1988). The facts of each case are distinguishable. In *Norton,* the employees were drivers for the defendant's van service and were required to respond quickly when called by the defendant dispatcher. 839 F.2d at 654. The drivers worked an 8 to 12 hour shift and were compensated for waiting time only if they received a call within two hours of the last call. *Id.* The court determined the employees should not recover compensation for their waiting time because the drivers had the opportunity to pursue personal business between assignments. *Id.* at 655. Unlike the detectives in the present case, however, the drivers had an option to go "unavailable" for a period of time or drop to the bottom of the driving list, thereby ensuring a longer period of time off duty. *Id.* at 656.

In *Boehm,* the plaintiffs were power company linemen called out for overtime duty during storms and emergencies. 868 F.2d at 1183. The court concluded that the employees were not entitled to overtime compensation for the time spent waiting for an emergency or storm. The only requirements of the call-out policy in *Boehm* were that the employees be reachable and accept call-outs one out of every three times called or be subject to disciplinary actions. *Id.* Call-outs were not counted if the employee was on vacation, ill, or injured. In addition, call-outs were limited to one per weekend or holiday. *Id.*

The detectives in the present case did not have the option to decline a call or the ability to drop their names down on a list in order to delay the receipt of calls. Based upon these facts, the court finds *Norton* and *Boehm* distinguishable.

The court also declines to adopt the strict standard for determining the compensability of standby time urged by the City and adopted by the Fifth Circuit in *Bright v. Houston Northwest Med. Center Survivor, Inc.,* 934 F.2d 671 (5th Cir.1991). In *Bright,* a single technician for the defendant remained on call at all times, year around, beyond his regular shift. The employee did not receive compensation for on-call time but did acquire compensatory hours when he was called, an average of four to five times per week. *Id.* at 673–74. The *Bright* court concluded that the test to determine whether an employee can use on-call time effectively for his own purposes does not imply the employee must have substantially the same flexibility or freedom as if he were not on call. *Id.* at 677. Thus, the court determined the technician who was not required to remain on the employer's premises while on call and was free to go anywhere or doing anything during the on-call time, subject to the requirements that he always be reachable and capable of responding within 20 minutes of a call and not be intoxicated when called, was not precluded from using the on-call time effectively for his own personal pursuits. *Id.* at 676.

This court is not bound by the *Bright* decision. As was already noted, the *Renfro* decision by Judge Saffels was approved in all aspects by the Tenth Circuit. Since the facts of *Renfro* are similar to the present case, this court has applied the standards for determining compensability of standby time in accordance with mandates of that decision.

The court therefore finds that the City violated the provisions of the FLSA in failing to compensate the plaintiffs for time spent on standby status.

3. *Willfulness*

29 U.S.C. § 255(a) extends a cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages from two years to three years in cases of willful violation of the FLSA. Plaintiffs contend the City knew it was bound by the provisions of the FLSA and thereby willfully violated the FLSA in implementing the flex-time plan and the use of pagers to avoid compensation for standby hours. The City argues that the plaintiffs have

failed to establish reckless disregard or evil intent by the municipal authorities in implementing the programs, and accordingly, did not act willfully.

■ Contrary to the court's findings at the hearing, the court concludes upon further examination that the City did not willfully violate the FLSA. Accordingly, the statute of limitations will not be extended from two years to three years.

A violation of the FLSA is willful if the employer knew or showed reckless disregard that its conduct was prohibited by the Act. *McLaughlin v. Richland Shoe Company*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). If an employer acts reasonably in determining its legal obligation, its action is not considered willful under the *McLaughlin* standard. The same is true if the employer acts unreasonably, but not recklessly, in determining its legal obligations. *Id.* at 135 n. 13, 108 S.Ct. at 1682 n. 13. Thus, ordinary violations of the FLSA are subject to the general two-year statute of limitations and a showing of negligence or an incorrect assumption that a pay plan complies with the Act will not extend the statute of limitations. *Id.*

In *McLaughlin*, the Supreme Court specifically rejected the standard for determining willfulness urged by the detectives. The court concluded that a test for willfulness based upon an employer's awareness of the possible application of the FLSA obliterated any distinction between willful and nonwillful violations. Therefore, only those acts which the employer knew or recklessly disregarded as violative of the Act are deemed willful.

In this instance, the court finds that the plaintiffs have failed to meet their burden of proving willfulness. *EEOC v. O'Grady*, 857 F.2d 383, 388 (7th Cir.1988) (plaintiffs must make a sufficient showing of a reckless or knowing violation). The detectives have produced no evidence showing that the City knew its flex-time plan or standby plan violated the FLSA. The detectives merely assert the City knew the FLSA was applicable to the police department. This evidence, however, is insufficient to establish a knowing violation. Nor does the evidence establish a reckless violation. Although the City was aware of the requirements of the FLSA and was litigating similar issues in another case (*Renfro v. City of Emporia, Kan.*, No. 87–4038–S), negligence and an incorrect assumption that a pay plan complies with the FLSA do not render a violation willful. *McLaughlin*, 486 U.S. at 135, 108 S.Ct. at 1682.

Accordingly, the applicable statute of limitations is two years from the date of filing this lawsuit, April 30, 1990. This conclusion is dispositive of plaintiff Adams' case, who was employed as a detective from March 14, 1987 through May 17, 1987.

### 4. Liquidated Damages

■ An employer who violates the FLSA is liable to its employees in the amount of unpaid minimum wages, unpaid overtime compensation, and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The court, in its discretion, may award no liquidated damages or award reduced liquidated damages if the employer shows to the satisfaction of the court that an act or omission giving rise to such action was in good faith and the employer had reasonable grounds for believing the act or omission was not in violation of the FLSA. 29 U.S.C. § 260.

The purpose of awarding liquidated damages is the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages. *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir.1991). Liquidated damages are mandated if the employer does not meet its burden of showing *both* that it acted in good faith and that it had reasonable grounds for believing that its actions did not violate the Act. *Doty v. Elias*, 733 F.2d 720, 725 (10th Cir.1984); *Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir.1982). The good faith requirement mandates that an employer have an honest intention to ascertain and follow the dictates of the FLSA. *Renfro*, 948 F.2d at 1540. The additional requirement that the employer have reasonable grounds for be-

**546**

lieving his conduct complies with the FLSA imposes an objective standard by which to judge the employer's behavior. *Id.; Marshall,* 668 F.2d at 753.

In *Doty,* the court found that an employer who did not seek the advice of an attorney or relevant government agency and did not read the government literature available to him failed to meet his burden of proving that reasonable grounds existed for believing he was in compliance with the FLSA. 733 F.2d at 726. In *Renfro,* the City attempted, through a single telephone call to the Department of Labor, to determine if its on-call policy for firefighters complied with the FLSA. The court found that the City failed to meet the reasonable grounds requirement and upheld the award of liquidated damages. *Renfro,* 948 F.2d at 1541.

In this case, the City has once again failed to meet its burden of establishing reasonable grounds for its belief that the flex-time plan and standby program were in compliance with the FLSA. The sole evidence of reasonableness offered by the City is the testimony of Chief Blemenkamp that he called the Department of Labor seeking approval of the pay plans. If the City would have obtained confirmation from the Department of Labor, there would be no lawsuit since the City could not be held liable. In addition, the City was aware of its mistakes due to the pending litigation instituted by the City's firefighters. *Renfro v. City of Emporia, Kan.,* No. 87–4038–S. Thus, the City's failure to obtain written approval of its pay plans overshadows any claim of reasonableness.

Without further evidence to support a claim of reasonableness, the court finds that the City has failed to meet its burden of proof. The court need not address the issue of good faith since the City must satisfy both requirements to escape the payment of liquidated damages.

IT IS THEREFORE ORDERED this 2nd day of January, 1992, that the City violated provisions of the FLSA in failing to compensate the plaintiffs for lunch periods worked and time spent on standby.

IT IS FURTHER ORDERED that the City compensate the plaintiffs at one and one-half times their regular rate of pay for unpaid lunch periods and standby time worked but not compensated. The City is ordered to pay $4,659.09 for unpaid lunch periods and $39,287.61 for unpaid standby time to plaintiff James R. Davis. In addition, the City shall pay plaintiff Davis $43,-946.70 in liquidated damages. The City shall compensate plaintiff Lyle Armitage $4,174.79 for unpaid lunch periods, $30,-861.76 for unpaid standby time and $35,-036.55 in liquidated damages. The City shall pay to plaintiff David Jamison $4,403.07 for unpaid lunch periods, $34,-224.28 for unpaid standby time and $38,-627.35 for liquidated damages. The City shall pay to plaintiff Steven Edwards $4,450.97 for unpaid lunch periods, $33,-091.79 for unpaid standby time and $37,-542.76 in liquidated damages. The City shall pay plaintiff Mark Moore $3,990.88 for unpaid lunch periods, $26,823.80 for unpaid standby time and $30,814.68 in liquidated damages.

IT IS FURTHER ORDERED that the plaintiffs are entitled to reasonable costs and attorney fees.